**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| | Case No. 25 B 3165 |
| Igor Liokumovich, | |
| Debtor. | Chapter 7 |
| Elequin Securities LLC, | |
| Plaintiff, | Adv. No. 25 A 351 |
| v. | |
| Igor Liokumovich, | |
| | Judge David D. Cleary |
| Defendant. | |

**MEMORANDUM OPINION**

This matter comes before the court on the motion to enforce ("Motion to Enforce") filed by Igor Liokumovich ("Debtor"). Debtor requests enforcement of a settlement agreement between himself and Elequin Securities LLC ("Elequin"). Elequin filed a response ("Response"), and Debtor filed a reply ("Reply").

Debtor argues that the two parties came to an agreement in their email exchanges and thus an enforceable settlement exists between them.

Having reviewed the Motion to Enforce, and the papers submitted in support and in opposition to the Motion to Enforce, the court will deny the Motion to Enforce.

## I. JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §

157(b)(2)(B), (F). Venue is proper under 28 U.S.C. § 1409(a).

## II. BACKGROUND

Elequin filed this adversary proceeding on November 3, 2025, seeking a declaration that debts owed to it are non-dischargeable, and a denial of Debtor's discharge. Complaint, Adv. No. 25 A 351, EOD 1. Debtor filed an affirmative defense of issue preclusion, as well as a counterclaim objecting to a portion of Elequin's proof of claim. Answer, Adv. No. 25 A 351, EOD 10. The parties began engaging in settlement discussions in early 2026, exchanging various emails with proposals and terms for an agreement. Motion to Enforce, Adv. No. 25 A 351, EOD 44, Ex. 2.

After Debtor had rejected a prior settlement offer from Elequin, Debtor's attorney emailed counsel for Elequin stating that:

> Liokumovich is willing to pay $15,000 to the estate in full satisfaction of all of Elequin's claims against him. This would resolve all disputes between the parties, including but not limited to the pending adversary proceeding. Elequin would retain a claim against the bankruptcy estate. … It is a stretch for him to pay $15,000, but he is willing to do so only if this buys immediate and everlasting peace with Elequin.

Motion to Enforce, Adv. No. 25 A 351, EOD 44, Ex. 2. Elequin responded to this offer on May 27, 2026, stating:

> The offer is accepted. Debtor contributes $15,000 to the estate. Elequin retains its claim in the bankruptcy case to which no party will object. This resolves all disputes between the parties.

*Id.*

Debtor then sent a draft agreement to Elequin on June 15, 2026. Elequin requested various non-material changes on June 18, 2026. Debtor accepted some changes, while rejecting others, and sent a revised agreement to Elequin on July 2, 2026. On July 4, 2026, Elequin wrote "[s]eems we have one issue left" and requested an additional non-material change to the

agreement. *Id.* Debtor made the requested change to a single paragraph, and sent Elequin another revised agreement on July 8, 2026. Then, on July 9, 2026, Elequin sent a further revised agreement to Debtor, adding a "point of clarification" to the release language. That language reads as follows:

> For avoidance of doubt: (i) Liokumovich is no longer bound by the Non-Competition Agreement, which is terminated and of no force and effect; and (ii(ii) Liokumovich is still bound to not use Elequin's confidential information including trading strategies; and (iii) Elequin will retain its claim against Liokumovich's bankruptcy estate in the amount of $673,608 (as set forth in the Proof of Claim).

Motion to Enforce, Adv. No. 25 A 351, EOD 44, Ex.4. Debtor did not accept this provision and subsequently filed his Motion to Enforce on July 22, 2026. Motion to Enforce, Adv. No. 25 A 351, EOD 44.

## III. LEGAL DISCUSSION

The question before the court is whether the parties have an enforceable settlement agreement. "Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law." *Magallanes v. Illinois Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008). "Courts apply ordinary contract construction rules when interpreting settlement agreements." *Dillard v. Starcon Int'l, Inc.*, No. 03 C 9408, 2005 WL 8177361, at *4 (N.D. Ill. Dec. 2, 2005), *aff'd*, 483 F.3d 502 (7th Cir. 2007). "As with any contract, there must be an offer, an acceptance, and a meeting of minds on terms." *Lampe v. O'Toole*, 685 N.E.2d 423, 424 (Ill. App. Ct. 1997).

In the Motion to Enforce, Debtor argues that Elequin "explicitly accepted Liokumovich's settlement offer" on May 27, 2026. Motion to Enforce, Adv. No. 25 A 351, EOD 44, p. 5. Debtor's offer was to contribute $15,000 to the estate, Elequin would retain its claim in the bankruptcy case, and the settlement would resolve all disputes between the parties. *Id.* Debtor

argues that the parties "plainly expressed their intent to 'resolve all disputes' between them, and that [Debtor's] payment was 'in full satisfaction' of Elequin's claims against [Debtor]." Motion to Enforce, Adv. No. 25 A 351, EOD 44, p. 5.

"A settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms." *Beverly v. Abbott Laboratories*, 817 F.3d 328, 333 (7th Cir. 2016). A meeting of the minds exists where the parties "truly assent to the same things in the same sense on all of its essential terms and conditions." *La Salle Nat. Bank v. Int'l Ltd.*, 263 N.E.2d 506, 513 (Ill. App. Ct. 1970).

"Whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (citation omitted). "[A] contracting party cannot be expected to peak into the other's mind and discover that it had a different view of the terms than stated in the contract. It is for that very reason that the law long ago rejected the notion that there must be a subjective meeting of the minds of contracting parties in place of an objective theory of intent." *Loop Paper Recycling, Inc. v. JC Horizon Ltd.*, No. 08 C 7364, 2010 WL 1655254, at *14 (N.D. Ill. Apr. 22, 2010) (quotation and citation omitted). "If a document parties agree to draft is to contain any material term that is not already agreed upon, no contract is made until that term is agreed upon…." *Intaglio Serv. Corp. v. J. L. Williams & Co.*, 420 N.E.2d 634, 638 (Ill. App. Ct. 1981).

After the "acceptance" by Elequin, Debtor's attorney drafted a settlement agreement with a full mutual release between the parties. Motion to Enforce, Adv. No. 25 A 351, EOD 44, Ex. 1. After Elequin requested some initial changes, and Debtor implemented those changes, Elequin stated there was "one issue left – how to ensure Elequin actually gets the benefit of the bargain" and requested a change to the second draft. Motion to Enforce, Adv. No. 25 A 351,

EOD 44, Ex. 3. Debtor then revised the draft and responded: "If you have any further changes, please make your proposed changes in the document itself and send it back to me." *Id.* Elequin then added the language in section 3(a) that is the subject of this Motion to Enforce. Debtor objected to this change in their email exchange and reinforced his desire to get the prior draft of the agreement signed and implemented. Motion to Enforce, Adv. No. 25 A 351, EOD 44, Ex. 5.

Elequin's position in the email exchange supports the conclusion that Elequin objectively believed that details as to the settlement agreement were still being negotiated. Elequin was discussing several changes to the settlement agreement throughout the exchange and nothing in the exchange supports the conclusion that the parties had reached a finalized agreement. In fact, Debtor admitted that the agreement was not signed and expressed his desire to implement the prior draft before Elequin's final requested change. Debtor even stated "[i]t would be a shame if Elequin [threw] away this settlement." *Id.* Elequin's addition of the clarifying language underscores that Elequin's understanding was that the material terms of the settlement were still being finalized.

Notably, Debtor's main argument is that the May 26, 2026, and May 27, 2026, emails constitute an offer and acceptance and then argue that the settlement agreement draft dated July 8, 2026, should be enforced. Motion to Enforce, Adv. No. 25 A 351, EOD 44. The settlement agreement draft adds language specifically terminating the Non-Competition Agreement by which Debtor is bound, and nowhere in the email exchange does Elequin agree to such a provision. Motion to Enforce, Adv. No. 25 A 351, EOD 44, Ex. 1. Thus, it is even more plausible that the material terms of the settlement agreement were not fully finalized in the May 26, 2026, and May 27, 2026, email exchange. The parties did not reach a meeting of the minds on the material terms of their agreement.

To conclude that an enforceable agreement exists, the court must find offer, acceptance, and a meeting of the minds. The court finds that there was no meeting of the minds between Debtor and Elequin, and there is no enforceable contract. The motion must be denied.

## IV. CONCLUSION

For the reasons stated above, the Motion to Enforce is denied. The court will enter an order, consistent with this ruling.

ENTERED:

Date: October 21, 2026



DAVID D. CLEARY
United States Bankruptcy Judge